Good morning all. Our first case this morning is Union Pacific v. Wisconsin Department of May it please the court, Assistant Attorney General Brian Keenan on behalf of the Wisconsin Department of Revenue and Secretary Peter Barka. UP's challenge in this case fails under the Supreme Court's decision in ACF Industries. The 4R Act imposes two specific restrictions on state property taxes as applied to railroads. First, states must impose the same rate on railroads and commercial industrial property. And second, they have to apply the same assessment ratio to commercial industrial property as they do to railroads. And that's in subsections B1 through B3 of the statute. Wisconsin satisfies those two criteria. UP's claim is under subsection B4, which prohibits a state from imposing, quote, another tax that discriminates against railroads. Mr. Keenan, good morning. This is Judge Rovner in the ether. You focus on the Supreme Court's holding that property tax exemptions, even if a variant of tax discrimination, fall outside subsection B4's reach. But the court also recognized that B4 might apply where an exemption served to apply an ad valorem property tax only to railroads, either alone or as part of some isolated and targeted group. Are you arguing that the hypothetical in ACF Industries is dicta that we should not follow and that B4 never applies for challenges to property taxes? Well, we think that it is dicta and the Supreme Court has not officially adopted that position. We think this court should not follow that exception here. It's possible that such an exemption could apply, or an exception to the general rule should apply, but it wouldn't apply here. Can I ask you a follow-up on that same point? Let's just stipulate hypothetically that we're in that circumstance, where you have a targeted singling-out tax. Forget the facts here altogether. What provision would it violate? A singling-out tax? Yeah, so let's just hypothetically, I'm not binding you here, okay? We have a singling-out tax on railroads, okay? Property tax, okay? Because we know the Supreme Court in the ACF majority expressed grave reservation with that. We had it. What provision would it violate, if it violated the statute? Yeah, I think it could violate subsections B1 through B3. For example, if a state taxed railroad... Don't you think in ACF the court, in recognizing that possibility, was talking about B4? Yes, I think they were thinking it could violate B4 if no other taxpayer is paid a property tax, and only railroads or perhaps some small group of targeted companies also paid an ad valorem property tax, but no other taxpayer is paid. So that's where the B4 would come in. I do think that, for example, if there was a situation like that, the rate being applied to commercial industrial property would be zero, and it would also violate subsection B3, because if there's no tax on commercial industrial property, then they're also... But if it also violating B3 doesn't help you on your statutory argument, if it violates B4 in our hypothetical, right? Your main argument that B4 has absolutely nothing to do with property taxes seems defeated to me. Yeah, I mean, it has not been recognized by the Supreme Court. We do think it should inform how broadly someone's going to interpret B4 when the language is it's another tax, and it's different from the taxes in B1 through B3, that it should inform the court that the exception should be construed very narrowly and not broadly as the district court did and some other circuit courts have done. Well, you know, you argue that we cannot focus solely on the category of intangible personal property. In what context, then, could we find an exemption discriminatory that serves to apply a tax only to railroads? In other words, would it be discriminatory only if all property taxes, including real tangible personal and intangible personal property, apply only to railroads? Yes. I think it would be if, as under this court's decision in Burlington Northern versus Wisconsin Department of Revenue, the calculation is the taxes paid by the railroads divided by the total tax levy. So there were two possible definitions the court held out there. One was personal property tax levy. I'm sorry. Forgive me. Are you responding yes to my question? Well, I'm forgetting whether this phrase is a positive or negative, whether I should answer yes or no. I think it would have to be either all property tax levy or personal property tax levy under Burlington Northern. But if so, given the unlikelihood of that scenario, wouldn't that render the exception in ACF industries a nullity? I think in practice, yes. It will not show up, and that shows why Congress chose the thought that the B-1 through B-3 protections would be sufficient to protect railroads. I think it's important to realize that the exception was mentioned in response to a, the opinion in the Supreme Court mentioned it in response to an argument by the railroads that the interpretation offered by, that was ultimately adopted by the court, allowed discrimination in the extreme. And the court was saying no, it doesn't, and that if such a situation would arise where a state exempted all other property from the tax levy, then perhaps you could fall into B-4. It's a singular case, as this court recognized in Burlington Northern, and we think it's really not a practical reality that that will ever happen, given the state's dependence on property taxes and the vastly superior amount of property that's owned by commercial industrial taxpayers as compared to railroads in any state. And we think that's why Subsection B-4 doesn't need to apply to property taxes. The B-1 through B-3 protections are sufficient. Because I think it's important to note that this comparison made in B-1 through B-3 was between taxed property of the commercial industrial taxpayers and all railroad property. If the Congress had wanted to make a comparison to a different set of property, for example, specifically saying you have to tax intangible personal property for railroads and commercial industrial taxpayers could have done that. Instead it set out a comparison between the taxed property of commercial industrial and all property of railroads, showing that Congress wasn't concerned about property that states decided not to tax, owned by commercial and industrial taxpayers. That's this case as a complaint about Wisconsin not taxing that property for commercial industrial owners, but taxing it for railroads. We feel this falls squarely in the general rule of ACF industries, and that's really what should govern and not expand this exception so that it swallows the rule. Because, frankly, any time you use B-4 in a property tax situation, it will be being used to do what subsections B-1 or to prohibit what B-1 through B-3 allow. And that was the central holding of ACF was that's not how we should interpret the statute. And by broadly construing the exception, that's what you end up doing in every case. Mr. Keenan, set aside just for a moment ACF and CSX in the Supreme Court's cases. Can you identify a case from the lower court, any lower court, on an analogous fact pattern that's treating B-4 as you propose? Well, we think that Burlington Northern treats it as we propose from this case. But not with respect to intangible personal property specifically, no. But Burlington Northern, are 95 decisions what you're talking about? Yes. I mean, it certainly can't, that can't erase the singling out exception, right? Nor did it purport to from ACF. And what I really wonder about from Burlington Northern is whether, you know, the measurement aspect of Burlington Northern is really on all, is on sound footing after the Supreme Court's decision, especially in CSX-2. Well, I believe CSX-1 and 2 involved not property, did not involve property taxes. And therefore, we think it's not analogous in that B-4. No, I know that's your first argument. But suppose we get into measuring, right? If you would say, well, if you're going to allow this to fit within B-4 and then we're going to move to measurement, you want to use a ruler where it's the entire property tax base. What I'm suggesting is that CSX-2 may suggest a little bit more of a functional approach, a little bit more of an approach that is targeting, you know, that which is alleged to be discriminatory. Well, I think I've already made my point that we think CSX is about other types of taxes. So the concerns about construing B-4 to conflict with B-1 through 3 don't apply there at all. And secondly, though, we think that to the extent you're going to do a calculation that looks at the property that is not taxed as the denominator, you're just always going to satisfy subsection B-4. Because if, for example, if machinery is exempt and Union Pacific says, well, you can't tax our machinery, you're giving an exemption to the commercial and industrial taxpayers. And if you use the denominator of, well, what's the tax on machinery, it's going to be railroads bearing, like, a high proportion of that tax because the commercial and industrial don't pay it. So I think through that analysis you might end up where no, all tax exemptions have to apply to railroads that you are giving to other taxpayers, which is conflicting with, like, central thrust of the ACF decision. And so that's why we think you have to look at either the personal property tax levy or the real and personal together. And when you look at that, the railroads here pay 1% of the tax levy, perhaps up to 10% or so if you kind of do this apples to oranges comparison of their total tax versus everyone else's personal property tax. So we think it's... But your interpretation seems to me is inconsistent with the interpretation of the same provision by a number of other courts. Well, we think, yes, there's decisions going the other way. We think two of those, though, the state applied no personal property tax whatsoever to the non-railroads. So therefore, under Burlington Northern, that would possibly be a violation depending on the denominator you use. We think the Tenth Circuit and Oregon decisions are just wrong, that they've adopted this, that there's something, that ACF industry's exception applies to discriminatory exemptions, which just isn't the case. It didn't say that any exemption discrimination violates the 4R Act. It actually allowed exemption discrimination in great part. Burlington Northern recognized that Wisconsin could exempt 80% of non-railroad property. And so we think those cases are inconsistent with Burlington Northern versus Wisconsin Department of Revenue and with ACF itself. Well, the category of intangible personal property is a discrete category of taxes. A just, as is real property, intangible personal property. And so when we're, you know, assessing whether an exemption is used in a way to effectively impose a tax on an isolated group, doesn't it make sense to consider only the taxes in that particular category? Well, the tax UP pays is a personal property tax. The statute says they pay tax on all of their real and personal property. So we think that is the category that should be used. And intangible personal property is only mentioned in an exemption, which shows that this is an exemption case governed by ACF Industries. And I see I'm running out of time, so I'll reserve the balance for rebuttal. All right. Thank you, Mr. Keenan. Mr. Goodwin. Just follow me, please, the court. I think we start with the conclusion that the district court reached here based on an undisputed factual record. Remember, these are cross motions for summary judgment. It's clear that Wisconsin's tax on intangible personal property under Chapter 76.01, which is where they put the utilities, singles out railroads in violation of 11501B4. In other words, if a business owns custom computer software, a type of intangible asset in Wisconsin, it is taxed solely because not it's custom computer software, but because it's owned by a railroad, by a pipeline, by an interstate airline, or by a conservation and regulation company. Now, this is the first, according to my research, this is the first targeting property tax case that this court has faced under these facts. Although this court in Kohler, Kansas City Southern versus Kohler, which is that Sny Island drainage case, recognized the B4 exception from ACF. And as a matter of fact, Judge Scudder, to your question, this court suggested in Kansas City Southern that B4 may be the only way that a railroad can attack a targeted property tax. I'd like to get next to ACF. I'm not sure why people call the exception dicta. It was part of the substantive decision. The court was very carefully hearing a case under B4, which clearly applies to property taxes, and was distinguishing what is legitimate and what is not. Just because the facts didn't fit the exception in Oregon doesn't mean it's dicta. And again, I think in the Kohler, Kansas City Southern cases, this court has acknowledged that that exception exists, even though they didn't have to apply it in Kohler because they didn't have the facts to do that. Just suppose, for discussion purposes, we agree with you on that, that you can fit it within B4, you're reading ACF and the cases that follow it properly. I know Mr. Keenan disagrees with that, but Mr. Keenan has a point, does he not, that, look, okay, we're within B4, but we're still dealing with an exemption. And in Burlington Northern, you had 80% of the railroads, what was it, personal property? It was tangible personal property. Tangible personal property exempt from tax, and we had no issue with that because of the way the exemptions were working. So let's get past the B4 part of that. How do you respond to Mr. Keenan's point about, the fact of the matter is this is the product of an exemption. Well, actually in Wisconsin, as the Wisconsin Supreme Court has held, and I'm not saying a federal court under 306 is always bound by what state courts say, but in the Adams Outdoor advertising case, the Supreme Court of Wisconsin tells a different story than Mr. Keenan does. And they say, in partial response to what Judge Roebner was talking about, there are three classes of property in Wisconsin. These are in most states. There's real property, there's tangible personal property, and there's intangible personal property. And what they held as to Chapter 70 taxpayers, that was not a utility case, it was a Chapter 70 general taxpayers. As to those taxpayers, Wisconsin has chosen to tax only real property and only tangible personal property. The legislature has seen fit not to tax intangible personal property. And so is it really an exemption? It may not even really be an exemption, but Judge Scudder, I'm not sure that's really dispositive. The fact of the matter is that an intangible property tax does exist as to Chapter 76 taxpayers. And the only people paying it, 100% of the intangible personal property tax in Wisconsin is paid by these disfavored taxpayers. So you don't get into the be-in-Wisconsin data, you know, what's your numerator, what's your denominator. As Judge Connolly correctly pointed out, and he tried to find all kind of data, he was asking the Department of Revenue, have you got data to dispute any of this? And the answer was 100% of this tax is paid by these disfavored taxpayers. Your point is that for Chapter 70 purposes, it's working as an exemption, but your client is not a Chapter 70. That's correct. You're a 76 taxpayer, and you're saying this is the imposition of a tax that has nothing to do with an exemption, and it's a singling out tax on public utilities. I couldn't have said it better. That is exactly what our position is. And that squarely fits under the ACF exception. This is what the Supreme Court was talking about. Oregon had a tangible personal property tax. What do you question about that? But it had a bunch of exemptions. The car lines that rent railroad cars to railroads came in and said, hey, our rail cars are tangible personal property, and because of your exemptions, you've taken X percent off the tax rolls. That was the Oregon case, and that was the be-in-Wisconsin case. As the be-in-Wisconsin case pointed out, it was dooned by ACF. And I know from being in the law firm in be-in-Wisconsin, nothing is more incomparable than seeing the law change after you've tried your case. And so ACF came down, and this court said, it's another Oregon case of tangible personal property. That's not what we have here. We don't have any percentages to fool with other than the 100 percent tax on railroads as railroads, and they're paying the tax only because they're railroads. And I don't know of a clearer example of singling out and targeting than that. And as the district court pointed out, this is squarely within the singling out exception to ACF. And also, of course, your sister circuits have not considered the exception to be dicta and not applicable, and they haven't, in fact, applied it. So I think this case raises the issue of what is meant by generally applicable tax because that's the holding in ACF. A state may grant exemptions from a generally applicable ad valorem property tax without subjecting the taxation of railroad property to challenge under B-4. Well, what's a generally applicable tax? What the state is saying is as long as we have a tax on anything, as long as we have a property tax, then we have a generally applicable property tax, and we can target railroads. They don't deny that. They're targeting the railroads. They're just saying ACF says we can do it because we have a property tax. But I think, Judge Scudder, you're correct. It has to be more granular than that. What kind of tax is it? Is it a tax on real property? Is it a tax on personal property? Is it a tax on intangible personal property? And your sister circuits have said if the challenge tax is on an intangible, if that's the challenge tax, then you look at how other commercial and industrial taxpayers are treated on that tax, on intangibles. That's the way the Eighth Circuit analyzed it in Bexar. That's the way the Tenth Circuit analyzed it in Huddleston. And that's the way the court below analyzed it, which we think is correct. Otherwise, you can scuttle B-4 completely by saying, well, as long as you have got a tax on something, you know, if you tax bicycles, then okay, then you've got a generally applicable tax, and you can target the railroads. And that can't be what the Supreme Court thought it was allowing to do in the ACF case. And how do we know that you should look at the three different classes separately? One is the legislative history, which is cited in our brief, where Congress recognized that there are traditionally three classes of property, real, personal property, and intangible. We also know it from Adams Outdoor, specific to Wisconsin, and we know it from the case law. As I will discuss further in my argument, if I have time, is that the Eighth and the Tenth Circuits have held that a state that taxes the intangible personal property of a small group of utilities, including the railroads, but does not tax the intangible personal property of general commercial industrial taxpayers, has singled out railroads for discrimination in Section 11501B. And why is that right? Well, it's right because you're looking at the challenge tax. You're comparing the challenge tax to the tax on other commercial industrial taxpayers. That's correct. And courts have recognized that if you start aggregating property, if the challenge is to a specific type of property and you throw in real property, you muddle the analysis. This was the holding as early as the Clinchfield case over 30 years ago in the Fourth Circuit, where the railroads were complaining about the level of assessment on their personal property, and the state wanted to throw in real property and say, well, see, that equalizes everything because they're real property. And the Fourth Circuit said you can't do that. If they're challenging personal property, you look at personal property. The same thing was done in Bexar, where Iowa was rolling back to eliminate their personal property tax. And the state said, well, wait a minute. We're not doing anything to real property. It's still at market value. So you throw that in, and the discrimination isn't so bad. And the Eighth Circuit said in that case, no, you can't do that. We're talking about a specific class of property. And when you're talking about that specific class of property, you compare it to how that class of property is treated in the hands of other commercial and industrial taxpayers. So this tax on intangible personal property for Chapter 76 taxpayers is not part of a generally applicable tax. There is no ad valorem property tax on intangible personal property in Wisconsin, except if you're a railroad or the other three categories that disfavor taxpayers. So I think as well that the courts, I think these courts are right. The courts have uniformly rejected what the DOR is saying in this case, that you look at the property tax as a whole and not the specific class of property that's being challenged. Because otherwise you can just eviscerate the act if you don't get down to comparing real property to real property, tangible personal property to tangible personal property, and intangible property to other intangible property. So if you go back to the earliest case, kind of the grandmother case in B4 was the Ogilvy case coming out of North Dakota, where the Eighth Circuit came up with not a highly technical legal term, the obvious approach. They said it's obvious that to impose a tax on a class of railroad property that is not imposed on other commercial industrial property violates the act. The state's saying now, well, wait a minute, ACF changes all that. ACF says Ogilvy's no good because we have unfettered discretion to exempt commercial taxpayers from taxes that are imposed on railroads. So what have the courts after ACF said to them? The Barrett litigation in Iowa is interesting because there are two decisions, one before ACF, one after ACF, and the one before ACF challenged tangible personal property where the state was rolling back the valuation on tangible personal property and the Eighth Circuit held first, you don't aggregate it with real property, and then second, you've got to give the railroads the same thing you're doing to your commercial industrial taxpayers. Then ACF comes down. Then the railroads come back in Iowa and say, now we want to talk about our intangible personal property. We've got custom computer software. We want to talk about that. Well, that went back to the Eighth Circuit. Iowa said, please reconsider your first Barrett decision because ACF overrules you in Barrett, and the Eighth Circuit said no because these are targeted singling out taxes. And then the court went on to say that what was going on in Iowa in connection with custom computer software was that the railroads were singled out for taxation while leaving untaxed most of the personal property of every kind and all the intangible property of the vast majority of commercial industrial enterprises. And we think, Your Honor, those are very sound decisions. They are a sound application of B-4 to protect railroads from being targeted for discrimination. I don't mean targeted by they get together in a smoky room and say we're going to get the railroads. What I'm talking about, these are taxes that isolate the railroads from the universe of other commercial industrial taxpayers. And if there's one thing that the legislative history tells us about Section 306 was that Congress was saying we're tired of the states treating the railroads as if they're not just other business enterprises. And the best way to protect them, the best way to politically protect them is to throw them in with the large majority of other commercial industrial taxpayers because railroads, in words of the Supreme Court, are non-voting, non-resident, big taxpayers. You can't pick up your tracks and move because you don't like the taxing scheme. Congress's view was we need to treat the railroads as if they're other commercial industrial taxpayers. And it's kind of distressing that 40 years after the passage of the Act, we're still talking about this. We're still talking about a tax that a railroad pays simply because it's a railroad. I'll say my time has expired. Thank you, Judge. Thank you, Mr. Chairman. ACF industries held that subsection B4 does not limit state discretion to levy a tax upon non-railroad property while exempting various classes of non-railroad property. That's what's happening here. So there's no limit to the argument that UP is making that wouldn't just entitle railroads to every exemption granted to any other taxpayer because that would be discriminatory not to give it to them. I think that's shown by the fact that what they want out of this case is to be able to take their custom computer software as an exemption. That's what this case has all been about, is they want to exempt it. They're not entitled to that exemption. Thus, it falls under the general rule in ACF industries. And there's no difference in the statute between intangible personal property. Whatever it says in the legislative history, that's not in the statute. There's no statutory basis for some sort of special treatment of intangible personal property. Mr. Keenan, do you have any comment about Mr. Goodwin's reflection on the Wisconsin Supreme Court's approach? Sure. So Adams Outdoor, like the Wisconsin Supreme Court likes to do sometimes, it had, like, three alternative holdings. So one was intangible personal property isn't taxed under the statute. One of the others was it's exempt under 70.1121. So I don't think it matters, as Mr. Goodwin said, in the end whether you're not, if it just falls outside the tax or it's an exemption in that the definition of commercial and industrial property is property that's taxed. So the untaxed property just isn't considered, and it doesn't really matter whether that's through an exemption or through, like, a, it just, like, for some reason, it's, like, not in the scope of the tax before or after. It's about whether it's taxed or not. All right. Thank you, Mr. Keenan, Mr. Goodwin. Case is taken under advisement.